IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2009

**BRYANT D. MILLEN v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-21943     John P. Colton, Jr., Judge**

_____

**No. W2007-00674-CCA-R3-PC  - Filed July 23, 2009**

_____

The petitioner, Bryant D. Millen, appeals the post-conviction court's denial of his petition for post-conviction relief.  On appeal, he asserts that he received the ineffective assistance of counsel.  Specifically, he argues that his trial counsel was ineffective in failing to interview and investigate witnesses.  He further asserts that trial counsel failed to impeach the testimony of a witness with a prior inconsistent statement.  After a thorough review of the record and the parties' briefs, the judgment of the post-conviction court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Bryant D. Millen.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and P.T. Hoover, Dennis Johnson, and David Zak, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

I.  Background

Following a jury trial, the petitioner was convicted of first degree murder and sentenced to life imprisonment in the Tennessee Department of Correction.  On appeal, this court affirmed the petitioner's conviction and sentence.  *See State v. Bryant Dewayne Millen*, No. 02C01-9602-CR-00049, 1997 WL 97843 (Tenn. Crim. App., at Jackson, Mar. 7, 1997), *perm. app. granted* (Tenn. Nov. 24, 1997).  On denial of rehearing, the Tennessee Supreme Court held that evidence supported that the defendant "was guilty of premeditated and deliberate first degree murder, even though he killed an unintended victim." *Millen v. State*, 988 S.W.2d 164, 168 (Tenn. 1999).

The following is a recitation of the convicting evidence set forth in this court's opinion on direct appeal:

The appellant was a member of a gang known as the "Bloods." His intended victim, Tony Gray, was a member of a rival gang known as the "Crips." On June 1, 1994, the appellant told friends that he was tired of Gray's harassment and that if he saw Gray again he was "going to blast on him." Later that same day, the appellant went to a friend's house to get a gun. He instructed his friend that he "needed" the gun immediately. He was given a handgun with ammunition. The appellant proceeded to the corner of Graceland and David in Memphis. He placed a red bandana around his head and another around his mouth. FN1 Shortly thereafter, a car containing Tony Gray and several other passengers proceeded slowly down Graceland. FN2 The appellant drew his weapon and began running towards the car firing repeated shots at its passengers.

> FN1. The appellant is a member of the "Bloods" street gang. They wear red and black colors to signify membership in the gang. The intended victim is a member of the "Crips," a rival street gang. The "Crips" wear blue to signify membership in their gang.

> FN2. Tony Gray and the other passengers in the car were wearing blue.

The victim in this case was a 14 year old female. She was walking home from school down Graceland when the appellant began shooting at Tony Gray. The victim was hit and killed by an errant bullet fired by the appellant.

After the shooting, the appellant was observed running down Graceland towards his father's home. The police were dispatched to the house. Upon arrival, the appellant was found in the bathroom attempting to cut his hair. The handgun that the appellant had used was found buried in the backyard. After questioning, the appellant confessed to the shooting.

*Millen*, 1997 WL 97843, at *1.

On September 21, 1999, the petitioner timely filed a petition for post-conviction relief. Thereafter, post-conviction counsel was appointed, amended petitions were filed, and evidentiary hearings were held on September 30, 2005, October 3, 2005, and November 21, 2005. On September 30, 2005, the petitioner testified that trial counsel was hired by his family to defend him on charges of first degree murder. The petitioner stated that after school on the day of the shooting, he saw Tony Gray drive past his school. According to the petitioner, he had been having problems with Tony Gray. The petitioner, Danny "Little Bob" Walsh, and Terreyo Nailor flagged down a vehicle driven by Renard Williams and got a ride from school to Danny Walsh's house. Tommy

Drayton, Jamie Drayton, and a girl named Stephanie were also passengers in Renard Williams' vehicle. The petitioner did not know Stephanie's last name. In preparing for trial, the petitioner asked trial counsel to speak with Renard Williams as well as the other individuals in the vehicle. The petitioner believed that the individuals in the vehicle would confirm that before the shooting, he did not say anything about Tony Gray. The petitioner thought that trial counsel had interviewed all of the passengers in the vehicle before trial; however, he later found out that only Terreyo Nailor, Danny Walsh, and Renard Williams were interviewed by trial counsel.

The petitioner stated that Renard Williams testified at trial that during the ride to Danny Walsh's house, the petitioner said he was going to "put the blast on" Tony Gray. At the time of the testimony, the petitioner told trial counsel that Renard Williams was not telling the truth. Trial counsel objected to the testimony; however, the trial court overruled the objection. The petitioner stated that he later discovered that Renard Williams' testimony at trial was inconsistent with a pretrial statement he had given to an investigator working for trial counsel. The petitioner claimed that a memorandum evidencing the prior statement was among items that he received from trial counsel after his direct appeal. The memorandum was marked for identification as exhibit one. The petitioner asserted that trial counsel should have used the prior inconsistent statement to impeach Renard Williams' trial testimony.

On cross-examination, the petitioner stated that prior to trial, he identified the other passengers in the vehicle to trial counsel as Tommy Drayton and Jamie Drayton, who were brothers and were approximately fourteen and fifteen years old, Terreyo Nailor, who was sixteen years old, and Stephanie, who he estimated was fourteen years old. The petitioner stated that trial counsel interviewed Terreyo Nailor, but failed to interview Tommy Drayton, Jamie Drayton, and Stephanie. The petitioner thought that the three potential witness, who were not interviewed, would have confirmed that the petitioner did not say anything about Tony Gray.

A second post-conviction hearing was held on October 3, 2005. Trial counsel testified that the document identified as exhibit one appeared to be a report of a telephone interview with Renard Williams by Glory Shuttles. Ms. Shuttles is an investigator that was hired by trial counsel to speak with necessary witnesses. Trial counsel testified that Renard Williams gave unexpected testimony at trial; however, he did not remember his cross-examination of Renard Williams. He stated that his cross-examination of Renard Williams would have been based on the information that he had at the time of trial. Although trial counsel had no specific recollection of efforts to contact witnesses before trial, he stated that his office routine was to contact necessary potential witnesses through his office staff or an outside investigator. On cross-examination, trial counsel said it was undisputed that the petitioner fired the shot that killed the unintended victim. He recalled that the state presented evidence of premeditation including the testimony from an eyewitness that the petitioner was dressed in gang colors at the time of the shooting. He further recalled that the state presented evidence that the petitioner was attempting to cut his hair when apprehended. Trial counsel stated that he did not recall if Renard Williams' statement regarding what the petitioner said was included in his statement to the police. Trial counsel testified that his decision not to use Renard Williams' prior statement would have been a tactical decision.

A third hearing was held on November 21, 2005. Terreyo Nailor testified that on June 1, 1994, the petitioner flagged down a vehicle driven by Renard Williams and he, the petitioner, and Danny Walsh got a ride from school to Danny Walsh's house. Terreyo Nailor was seated in the back seat next to the petitioner. He stated he did not hear the petitioner say that he was going to "put the blast" on anyone. Before the petitioner's trial, Terreyo Nailor was interviewed by an investigator working for trial counsel. He stated he was available to testify at the trial in May of 1995; however, he was not called to testify. On cross-examination, Terreyo Nailor testified that in 1994, he and the petitioner were friends and spent time together everyday after school. He knew from others that the petitioner was having trouble with Tony Gray; however, he never heard the petitioner say anything about having a problem with Tony Gray. Terreyo Nailor knew that Tony Gray had been coming around the school he and the petitioner attended. According to Terreyo Nailor, the petitioner was wearing red on the day of the shooting which signified he was a member of the "Bloods" gang. He thought that Danny Walsh gave the petitioner a gun that day because the petitioner had seen Tony Gray and "he needed some protection." On redirect-examination, Terreyo Nailor estimated that it took two to three minutes to travel from school to Danny Walsh's house. On March 9, 2007, the post-conviction court entered an order denying post-conviction relief. The petitioner has appealed.

## II. ANALYSIS

### Waiver

Before we address the merits of the petitioner's issues on appeal, we must first address the state's argument that counsel for the petitioner did not timely file his notice of appeal. A notice of appeal must be filed within thirty (30) days after the date of entry of the judgment from which the petitioner is appealing. Tenn. R. App. P. 4(a). A notice of appeal is not jurisdictional, and the requirement for an untimely notice of appeal may be waived in the interest of justice. *Id.* The order of the post-conviction court was entered on March 9, 2007. The notice of appeal was not filed until June 18, 2007, and was therefore untimely. After preparing the notice of appeal, counsel for the petitioner withdrew and new counsel for the petitioner was appointed. The state has not argued, nor does it appear, that the untimely notice of appeal prejudiced the state. The petitioner was convicted of first degree murder, a crime of serious gravity, and sentenced to life imprisonment. Accordingly, we conclude that waiving the filing requirement for the petitioner's appeal serves the interest of justice, and we will address the merits of his claims regarding the ineffective assistance of counsel. *See State v. Mullins*, 767 S.W.2d 668, 669 (Tenn. Crim. App. 1988).

We further note that the petitioner raised a number of issues below that he has not raised on appeal including claims dismissed by the post-conviction court and additional arguments in support of his claim of ineffective assistance of counsel. All issues not raised on appeal are waived. *See* Tenn. R. App. 36(a).

### II. Ineffective Assistance of Counsel

-4-

On appeal, the petitioner argues that he received the ineffective assistance of counsel. Essentially, he asserts that trial counsel failed to use all the evidence available to defend against the charge of first degree murder and to show a lack of premeditation. Specifically, the petitioner asserts that trial counsel did not interview all possible witnesses. The petitioner also asserts that trial counsel failed to "utilize Williams' prior inconsistent statement to impeach him." The petitioner further argues that trial counsel was deficient in his failure to call Terreyo Nailor to testify at trial. According to the petitioner, Terreyo Nailor "testified in the post-conviction hearing that he was 'positive' that the petitioner did not make any statement about putting 'the blast' on Gray or anyone else." The petitioner asserts that Terreyo Nailor's testimony at trial would have challenged Renard Williams' trial testimony.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is bound to the post-conviction court's findings of fact unless the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id*.

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. *Strickland*, 466 U.S. at 694.

Upon review of the record, we conclude that the petitioner failed to demonstrate that he was denied the effective assistance of counsel. According to the petitioner's testimony at the post-conviction hearing, he told trial counsel that Tommy Drayton, Jamie Drayton, and Stephanie would have testified that the petitioner never said anything about Tony Gray and that their testimony would have supported a lack of premeditation in the shooting. Trial counsel testified that it was his practice to have an investigator interview necessary witnesses. The record reveals that an investigator hired by trial counsel interviewed Renard Williams, the seventeen year old driver of the vehicle, Terreyo

Nailor, a sixteen year old passenger, and Danny Walsh, who provided the petitioner with the gun. The petitioner estimated that the three witnesses not interviewed were each around fourteen years old. The petitioner did not know Stephanie's last name. Since the petitioner did not call any of the three potential witnesses to testify at the post-conviction hearing, he has failed to establish what their testimony would have been, or that he was prejudiced. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (concluding that failure to present a material witness at the post-conviction hearing generally results in the failure to establish ineffective assistance of counsel). We conclude that the record does not support the petitioner's claim that counsel was deficient in failing to interview, or call as witnesses at trial, Tommy Drayton, Jamie Drayton, and Stephanie. Additionally, we conclude that the petitioner has failed to demonstrate that he suffered any prejudice.

The petitioner claims that trial counsel was deficient in failing to call Terreyo Nailor to testify at the trial. However, our review of the record indicates trial counsel's strategy as to Terreyo Nailor was based on sufficient investigation. The record reveals that before trial, Terreyo Nailor was interviewed by an investigator working for trial counsel. Terreyo Nailor testified at the post-conviction hearing that the petitioner did not say he was going "to blast" Tony Gray. We note, as did the post-conviction court, that similar evidence had been presented to the jury through the testimony of Danny Walsh. We further note that the petitioner did not show that the testimony of Terreyo Nailor would have changed the outcome of the trial. At the post-conviction hearing, Terreyo Nailor testified that the petitioner wore gang colors on the day of the shooting. Therefore, Terreyo Nailor's testimony at trial could have provided further support to the state's case and the element of premeditation. We conclude that the tactical choice not to call Terreyo Nailor to testify at the trial was an informed decision based upon adequate preparation. *See Hellard v. State*, 629 S.W.2d at 9.

As to petitioner's assertion that trial counsel was deficient in failing to impeach Renard Williams' testimony with a prior inconsistent statement, we note that trial counsel objected to the testimony of Renard Williams. The objection was overruled and trial counsel did not revisit the testimony at issue. The jury had already heard contrary testimony from Danny Walsh, who stated that the petitioner did not say anything about Tony Gray. We conclude that trial counsel's failure to impeach Renard Williams' testimony with an unsworn prior inconsistent statement appears to have been a reasonable tactical decision. Moreover, the petitioner has not demonstrated that he suffered prejudice as a result of trial counsel's failure to ask Renard Williams about his prior statement, nor has he demonstrated that such questioning would have changed the outcome of the trial. The element of premeditation was supported by evidence other than Renard Williams' testimony. The record reveals that the petitioner wore gang colors at the time of the shooting, fled from the scene of the crime, attempted to hide the gun, and was cutting his hair at the time that he was apprehended. We conclude that the petitioner has failed to show that counsel's trial tactics were deficient, or that the petitioner suffered any prejudice as a result of the handling of Renard Williams' trial testimony.

Conclusion

-6-

Based on the foregoing, we conclude that the petitioner has failed to meet his burden of proof regarding his claims of ineffective assistance of counsel, and the post-conviction court correctly denied the petition. Therefore, the judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE